## 11052

### HARTER *ET AL.* v. JOHNSON *ET AL.*

．　　　　．　(115 S. E., 217)

1. CHARITIES—RESIDUE VESTED BY IMPLICATION IN EXECUTORS CHARGED WITH EXPRESS TRUST.—By a residuary clause giving and devising the residue without naming a taker for the purpose of establishing, etc., a public hospital, and expressly directing the executors to carry out the provision, the estate is by implication vested in the executors, charged with the express trust.

2. CHARITIES—SELF-SUPPORT CONSISTENT WITH GIFT TO ESTABLISH PUBLIC HOSPITAL.—That because the trust created by will, giving the residue for establishing a public hospital for treatment of white and colored patients, is a charitable trust, it does not necessarily follow that the idea is predominant that the benefits of the institution are to be enjoyed gratuitously; but absence of a provision for maintenance is inconsistent with a ·purpose that treatment be free, and consistent with self-support.

3. CHARITIES—TRUSTEES TO CARRY OUT PROVISION OF GIFT FOR "ESTAB-LISHMENT" OF PUBLIC HOSPITAL MAY ORGANIZE EXECUTIVE FORCE TO OPERATE AND MANAGE IT.—Executors authorized and empowered to carry out according to their best judgment the provisions of the will giving the residue for the purpose of establishing, building, and equipping a public hospital, may organize an executive force to operate· and manage it, and this, too, through the formation of a society, association or corporation; all this being implied in and referable to the duty of "establishment."

4. CHARITIES—TRUSTEES TO CARRY OUT PROVISION OF GIFT FOR "ESTAB-LISHMENT" OF PUBLIC HOSPITAL MAY LEAVE PART TO MEET DE-FICIENCY IN OPERATION.—Under discretion lodged in executors by will to carry out according to their best judgment the provision giving the residue for the purpose of establishing, building, and equipping a public hospital in the town of F., for treatment of white and colored patients, they may well and should take into consideration the size of the town, the health and needs of the community, the proximity of similar institutions, and other matters affecting the reasonable extent of the venture, with the result of leaving part of the fund for meeting deficiency in operation, as a proper element in the policy of a sound "establishment."

Note: On certainty of purpose of bequest for charity, see notes in 14 L. R. A. (N. S.), 49; 37 L. R. A. (N. S.), 1001, and 5 A. L. R., 316, 319.

Before MEMMINGER, J., Allendale. May, 1922. Affirmed.

Action by Mamie M. Harter et al. against J. E. Johnson, et al. as Executors of W. J. Young, Deceased et al. From decree confirming the Report of the Special Referee, the plaintiffs and certain defendants appeal.

The report of the Special Referee, J. E. McDonald, Esq., is as follows:

In pursuance of an order of reference made in the above-stated case on the 8th. day of July, 1921, whereby this cause was referred to me as special referee to take and report the testimony offered therein, together with my conclusions of fact and of law with leave to report any special mater, I beg leave respectfully to report:

(1) That subsequent to the commencement of the action, and upon petition of J. G. Murdock, the duly appointed guardian ad litem of the infant children of J. E. Young, deceased, to wit, Ruby Young, G. E. Young, O. L. Young, Roy Young, Harold Young, Hugh Young, James Young, Mary Young, W. E. Young, Carl Young, and J. C. Young, and by agreement of counsel in the cause, I made an order whereby the said infant children were made parties plaintiff. in the action and their said guardian was authorized and required to appear and prosecute the same in their behalf, and the summons and pleadings were amended to conform to said order.

(2) That by agreement of counsel in the cause, Fairfax Library Association and Dr. John L. Folk were also made parties defendant in the action, and the summons and pleadings were amended to conform thereto.

(3) That all parties defendant in the action have appeared by counsel and filed their answers in the cause except F. M. Young, who appeared and filed an answer in his own proper person, in which he alleges that he is a brother of William Jasper Young, deceased; that he is not participating in the cause of action set forth in the complaint; that he is not interested in the disturbance of the will of his said brother;

and he leaves his rights subject to the determination of the Court under the statute of distributions.

(4) That counsel for the various parties plaintiff and defendant in this cause, having agreed upon a statement of the pertinent facts underlying the issues herein, it thereby became necessary to take any testimony of witnesses or other documentary evidence, and my findings of fact herein will be predicated entirely upon the statements of fact as agreed upon by counsel except where same has been modified by sustaining objections to certain agreed statements as being incompetent, and the said statements will be filed with this report.

(5) The objection to a part of the fourth stipulation of facts, to wit, relating to conversations between testator and Dr. John L. Folk during the lifetime of the testator, which is held to be incompetent, is sustained. *Pell v. Ball,* Speers Eq., 48–82; *Smith v. Heyward,* 115 S. C., 163, 105 S. E., 281.

The objection to a part of stipulation No. 10 in the agreed statements of facts with reference to conversation between the testator and Dr. John Goode is sustained for the same reason. The objection to stipulation No. 15 is overruled for the reason that the facts therein stated are competent as tending to prove that the executors mentioned have accepted their trust, and said testimony does not purpose to be offered to throw light upon the intention of testator as expressed in his will.

(6) The issues in this case arise upon the will and codicil of Dr. William Jasper Young, who resided at Fairfax, S. C., and who died leaving such last will and codicil, which has been duly filed and admitted to probate, and of which the defendants J. F. Lightsey and others are the duly appointed and qualified executors.

By said last will and testament, Dr. Young, after making a number of specific bequests to certain nephews and nieces, and also to Fairfax high school district No. 44, and to

Fairfax Library Association, gave and devised all the residue of his estate, real, personal, and mixed, "for the purpose of establishing, building and equipping a public hospital in the town of Fairfax for the treatment of white and colored patients," and his executors therein named were authorized and empowered "to carry out this provision of my will according to their best judgment."

The parties, plaintiff and defendant, except the defendants J. E. Johnson, E. L. Young, and J. F. Lightsey, are the only heirs at law and distributees of the said Dr. Young, the testator.

The action is brought by the plaintiffs in behalf of themselves and such of the defendants as may come into this action and contribute to the costs and expenses thereof. The plaintiffs, after setting forth in the complaint the provisions of the will of Dr. Young, allege that the executors have not undertaken to carry out the provision of said will and codicil therein quoted, and that it would be improper for them to do so without first obtaining from the Court a construction thereof as to the meaning and validity of said will and codicil.

The plaintiffs further allege that the provisions of said will and codicil are inoperative to pass title to said property out of said testator; that said provisions are too "uncertain, indefinite, and incomplete to be effective as a disposition of property by will; that said provisions are null and void; and that the said William Jasper Young died intestate as to the property mentioned in said provisions; and that upon his death the same descended to and was inherited by the plaintiffs and defendants who are above named as heirs and distributees of said William Jasper Young."

The plaintiffs, therefore, pray judgment that the said will may be construed by the Court, that the said provisions thereof be held invalid, and that the property, mentioned therein, be divided and distributed according to law.

The executors in their answer, after admitting that they have qualified as executors, as alleged in the complaint, and that the plaintiffs and defendants, other than themselves, are heirs at law and next of kin of the testator, and that the excerpt from the will is correctly set forth in the complaint, deny each and every other allegation thereof.

By way of further answering the complaint, they allege that the testator died seized and possessed of a large estate, and that under the terms of his will, they were intrusted with its due and proper administration, and that they have no interest therein except the performance and fulfillment of their duties in carrying out the desires and instructions of the testator contained in his said will.

They further allege that, in view of the provision and adverse interest claimed and the far-reaching consequence of the allegations of the complaint, they are conscious of their lack of power to act independently of the Court's instructions, and they suggest to the Court the propriety of construing said will to the end that the intention of the testator may be determined, and that they be duly instructed and authorized in the proper administration of said estate.

They therefore pray judgment that the intention of the testator and the powers conferred upon them be determined and declared by the Court.

As above stated, the defendant, F. M. Young, a brother of Dr. Young, by his answer alleges that he does not seek to disturb the will of his said brother but only claims such rights as may accrue to him under the statute of distributions. He is not, therefore, an active participant in seeking to avoid the will of Dr. Young, but, as I understand, in the event such will is declared to be inoperative, then he does not waive such rights as he may be entitled to under the statute of distributions.

It appears, therefore, that the real issues in this case, with the exception mentioned, are entirely between the exe-

cutors of the will of Dr. Young, on the one hand, and his heirs at law or distributees, on the other.

I heard argument at Barnwell on the part of counsel, for the respecitve parties upon the issues of law arising out of the substantial undisputed facts in the case. These arguments upon both sides were very full and exhaustive and showed great ability, learning, and research, and they have contributed very materially towards enabling me to arrive at what I consider to be the proper determination of the issues raised by the pleadings herein.

I will, therefore, first state the facts found by me and then my conclusions of law.

## FINDINGS OF FACT

I find the following to be the facts as agreed upon by counsel:

(1) That Dr. William Jasper Young, late of Allendale County, in the state aforesaid, departed this life on the 25th day of July, 1920, leaving a last will and testament, dated the 13th day of July, 1920, which has been duly admitted to probate and filed in the office of the Judge of Probate for Allendale County. That in and by said last will and testament, the testator appointed the defendants E. L. Young, J. F. Lightsey, and J. E. Johnson, all residents of Fairfax, in said County of Allendale, as executors of his said last will and testament. That the said testator made a codicil to his said last will and testament, dated the 18th day of July, 1920, which was also duly admitted to probate, together with said will.

(2) That the said defendants E. L. Young, J. F. Lightsey, and J. E. Johnson duly qualified as executors of said last will and testament and codicil thereto, and entered upon the discharge of the duties of their said office, and are now the duly qualified executors of said will and codicil.

(3) That, after providing for the payment of his debts, the said testator bequeathed to his three nieces, Virginia

Durant, Edna Kearse, and Lily K. Myrick, all of Fairfax, S. C., the sum of $1,000 each, and by his codicil he bequeathed to each of his two nephews, George F. Young and J. Eston Young, both of Fairfax, the sum of $1,000. The said testator also bequeathed by his said will to Fairfax high school district No. 44 of Allendale County the sum of $10,000, the sum of $5,000 to be expended for the benefit of the white school in said district, and $5,000 for the benefit of the colored school in said district. He also devised by his will to Fairfax Library Association the house and lot where he then resided to be used for the purpose of maintaining a public library in the town of Fairfax, and his said executors were instructed to turn over said property to said library association when it should become legally chartered by the state.

(4) That the part of said testator's will, out of which the issues in this case arise, is as follows:

"All the residue of my estate, real and personal and mixed, wheresoever it may be found and of whatsoever it may consist, I give and devise, for the purpose of establishing, building and equipping a public hospital in the town of Fairfax, for the treatment of white and colored patients, and it is my desire that John L. Folk, physician of Brunson, South Carolina, act in an advisory capacity with my executors, whom I authorize and empower to carry out this provision of my will, according to their best judgment."      ,

That, in the codicil to testator's will, after confirming said will, in so far as is consistent with the codicil, he made the bequests to his two nephews, above stated, and then provided as follows:

"It is my request that the Fairfax Library Association co-operate with my executors in providing a nurses' home in connection with the hospital, provided for in my will."

(5) That the real and personal estate of the testator, Dr. Young, as shown by the schedule thereof, filed with the Collector of Internal Revenue for estate tax, consisting

very largely of personal property, is valued at $144,693.25, while the funeral expenses and other debts, exclusive of expenses of administrations, amounts to the sum of $1,-439.94.

That the defendants J. E. Johnson, J. F. Lightsey, and E. L. Young, the executors of said will, are men of recognized ability and integrity, and the defendant Dr. John L. Folk is a physican of large and general practice, and is skilled in his profession, and of good business judgment and experience, and he has accepted such obligations as the Court may hold to have been cast upon him under the will of Dr. Young, the testator, and that the said Dr. John L Folk resides in the town of Fairfax, but formerly resided at Brunson, a town of about 600 inhabitants, four miles south of Fairfax. That the said town of Brunson is near the Allendale County line in Hampton County, and the town of Fairfax is also near the Hampton County line in Allendale County; and that Dr. Folk's practice includes patients in the Fairfax neighborhood, and it has been among the white and colored people therein.

(6) That the Fairfax Library Association had accepted the devise made to it in the will of the said Dr. Young, and it is willing to comply with the request contained in the codicil to said will, which is above set forth, and it proposes to carry out the desires of the testator in so far as it may be able to do so.

That the testator, Dr. William Jasper Young, was a physician of large experience; that his practice was general, and a large part of it was among the colored people, and his estate was accumulated by his own personal practice at his office in Fairfax, S. C., at which place his patients from far and near and from various sections were treated each day in the week, and to whom he dispensed his own medicine, seldom, if ever, giving a prescription all throughout a long life of medical service for more than 40 years; and his said patients were treated for various complaints and

diseases in his office at his home in Fairfax, S. C., which was located in the building devised by him to the Fairfax Library Association.

(7) That the said testator, Dr. Young, died seized and possessed of three lots other than the lot and building devised to the Fairfax Library Association, but being separated therefrom by an open way with old fences on each side, which may or may not be a part of the testator's estate, or a public way; that the other of said three lots is a small triangular lot situate upon and facing the street paralleling the Charleston & Western Carolina Railroad, and the dimensions of said lots are shown on a diagram attached to this report, marked Exhibit A.

(8) That the small triangular lot and the lot devised to the Fairfax Library Association are separated from the right of way of the said Charleston & Western Carolina Railroad only by a narrow street, and that the other two lots, above mentioned, are behind, or in the rear, as above stated; that on one of them there is a six-room dwelling, and on the other a four-room dwelling, both in a good state of repair, and now rented.

That at a point 163 yards from the said triangular lot, and 257 yards from the other two lots in the rear of the lot devised to Fairfax Library Association, the Charleston and Western Carolina Railway and the Seaboard Air Line Railway cross or intersect each other; that on the Charleston and Western Carolina Railway, at said point, a considerable number of freight and passenger trains are operated daily; and on the said Seaboard Air Line Railway a great number of freight and passenger trains are operated daily.

(9) That the executors of the will of Dr. Young, since his death and their qualification as executors, have been negotiating with one George D. Sanders and with Mr. Knopf for the purchase of a site for the hospital, provided for in testator's will, at a considerable distance away from said railroads, but, after looking over these lots, they were

found to be wholly unsuitable, and the said executors would not buy them at any price.

(10) That there is now no hospital in the town of Fairfax and there is no specialized surgeon living or residing in the said town of Fairfax, and none nearer thereto than the city of Savannah, Ga., or Columbia, S. C., and the town of Fairfax has a population of about 1,000 inhabitants, but Dr. John L. Folk is now a practicing physician residing in Fairfax, and the said Dr. Folk was the head physician who attended Dr. Young in his last illness.

(11) The will of the testator, Dr. Young, was written by J. F. Lightsey at Dr. Young's dictation and in accordance with his instructions.

(12) The executors of Dr. Young's will have had tentative consultation with architects as to plans for the proposed hospital, provided for in the will of Dr. Young, but, owing to high prices of labor and material and rumored dissatisfaction with the will of Dr. Young on the part of his heirs at law, and a possible litigation arising therefrom, the efforts of the executors have, for the present, been suspended.

(13) I find that the following named persons, all of whom are parties to this suit, and all of whom as defendants have been duly served with summons and complaint, are the only and all of the heirs at law and distributees of the said Dr. William J. Young, the testator, to wit: "F. M. Young, a brother; Mrs. U. R. Cope, a sister; Mamie M. Harter, Lena Langford, Ada Langford, Clarence G. Carter, W. E. Carter, children of —— Young Carter, a deceased sister; Iola Bessinger, McHenry Kearse, Gordon Kearse, Edna Kearse, Lillie Myrick and Ruby Myrick, children of —— Young Kearse, a deceased sister; Maude Young Wideman, only child of J. J. Young, a deceased brother; G. F. Young, son of Owen Young, a deceased brother; and Ruby Young, G. E. Young, O. L. Young, Roy Young, Hugh Young, James Young, Mary Young,

W. E. Young, Carl Young, and J. C. Young, children of J. E. Young, deceased, a son of Owen Young, a deceased brother.

(14) That while counsel for all parties, at the hearing of argument by me, agreed that the defendant Ruby Kearse had been absent from the State more than seven years without being heard from, and that he was legally dead, has since been located in the state of Georgia, and has filed his answer herein by his attorney, J. Henry Johnson, Esq.

Discussion and Conclusions of Law.

From the pleadings and the undisputed facts hereinbefore set forth, it is clearly apparent that the real and fundamental issues for decision arise out of that part of Dr. Young's will in which he gives and devises the residue of his real and personal estate for the purpose of establishing, building, and equipping a public hospital in the town of Fairfax, S. C., for the treatment of white and colored patients.

It is the contention of the plaintiffs and a large majority of the defendants, who are heirs at law and distributees of Dr. Young's that said provision in the will of Dr. Young is inoperative to pass the title to said property out of the testator, and that, as to said property, he died intestate; that said provisions of his will are too uncertain and incomplete to be effective as a testamentary disposition of his property, and that they are, therefore, null and void, and that said property descended to his heirs at law and distributees under the statute of distributions.

On the other hand, the executors of said will very properly allege that they were intrusted with the duty of proper administration of the estate of Dr. Young under the powers and for the purpose stated in his said will; that they have no interest therein except the performance of their duties and the fulfillment of the testator's desires, and they, therefore, pray that the intention of the testator and the powers conferred upon them be manifested and declared by the

order of the Court, and that they be duly instructed as to the proper administration of said estate.

From the language used in that provision of the will of Dr. Young, under consideration here, is seems to me to be clear that he intended to create a charitable trust by the establishment and equipment of a public hospital to be located in the town in which he lived at the time of his death. Whether the language used by him in his will is sufficient for the purpose intended, and if so, whether the same can be carried out by the Court under well-settled principles of law, constitute the main issues for decision.

There is perhaps no other branch of the law, as to which there is so much conflict of authority in the decisions of the Courts in the various States. This conflict has arisen very largely from the fact that in some of the states the English statute of uses, known as 43 Elizabeth, chap. 4, is in force, and the cy pres doctorine also of the English origin is applied by those Courts. It is well, therefore, to state, at the outset that the Supreme Court of the State decided in more than one case that the Statute of 43 Elizabeth is not in force in South Carolina, and that the cy pres doctorine cannot be applied by the Courts of our State. There are, however, certain general well-established principles with reference to charitable trusts or uses that prevail and have been in force in all the states.

It is a well-settled and fundamental rule that in construing a will, the intention of the testator, to which effect may be given, must be found in the words used by the testator, and testimony of previous oral declarations, as to his intention, cannot affect the construction of the words used by the testator in his will to express his intention. *Smith v. Heyward,* 115 S. C., 163, 105 S. E., 281. This rule, however, does not prevent the Court from considering the circumstances surrounding the testator at the time he made his will, and the words used by him may be considered in the light of such surrounding circumstances.

(1) The first inquiry, therefore, is, did Dr. Young, by that provision in his will in which he gave and devised the residue of his property for the purpose of establishing a hospital at Fairfax, S. C., intend to create a public charitable trust. In the determination of this question, it must be borne in mind that there are two kinds of trusts, one known as a private trust, and the other as a public or charitable trust, and the distinction recognized in all of the cases, between these two classes of trusts, must always be kept in view. The characteristics of the two kinds of trusts are fundamentally and radically different from each other. The public at large is interested in a public charitable trust, while an individual or individuals alone are beneficiaries in a private trust.

In 5th American and English Encyclopedia of Law, 894, a legal charity, as defined by Judge Gray in *Jackson v. Phillips,* 14 Allen (Mass.), 566, is set forth in the following words: "A charity, in the legal sense of the term, may be defined as a gift to be applied, consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting and maintaining public buildings or works or otherwise lessening the burdens of the government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

In the same volume, page 895, it is stated: "A definition of 'charitable use' which has found much favor with both English and American Courts is that of Lord Camden, 'a gift to a general public use which extends to the poor as well as to the rich.' Indeed it has been said that public and charitable uses are synonymous."

In 5 Ruling Cases Law, p. 291, this definition of Judge Gray is said to be "probably the most comprehensive and

carefully drawn definition of a charity that has ever been formulated."

In 5 R. C. L., 293, a public charity is defined as follows: "A gift is a public charity when there is a benefit to be conferred on the public at large, or some portion thereof, or upon an indefinite class of persons. Even if its benefits are confined to specified classes, as decrepit seamen, laborers, farmers, etc., of a particular town, it is well settled that it is a public charity. It is this indefinite, unrestricted quality that gives it its public character. Without undertaking to be technically accurate, a 'purely public charity may be defined as one which discharges, in whole or in part, a duty which the commonwealth owes to its indigent and helpless citizens. Undoubtedly it is the duty of the State to educate its poor children, and thus fit them for discharging the duties of citizenship; to care for the indigent insane, its helpless orphans, and its poor who are sick and afflicted; and therefore an institution, which, serving no selfish interest, discharges, in whole or in part, any such duty, is a purely public charity. Thus, if an institution is one the benefits of which the public generally are entitled to enjoy, it is then a purely public charity—public, because, although not owned by the public, its uses and objects are wholly public, and for the benefit of the public generally, and in no sense private as being limited to particular individuals."

The distinction between charitable and private trusts is set forth in 5 R. C. L., 295, in the following language: "The requisites of a valid private trust, and of one for a charitable use, are materially different. In the former there must not only be a certain trustee who holds the legal title, but a certain specific *cestui que* trust, clearly identified, or made capable of identification, by the terms of the instrument creating the trust; while it is an essential feature of the latter that the beneficiaries are uncertain, a class of persons described in some general language, often

fluctuating, changing in their individual members, and partaking of a quasi public character. The most important distinction, however, between charities and other trusts is that in the time of duration allowed and the degree of definiteness required. Trusts for public charitable purposes, being for objects of permanent interest and benefit to the public, and perhaps being perpetual in their duration, are upheld under circumstances under which private trusts would fail."

In the same volume (5 R. C. L., 296) it is said: "No formality in the use of language is necessary in order to create a public charitable trust. The Court look to the purpose for which the gift was made, rather than to the particular words used to designate that purpose. And while a gift cannot be sustained as a charity unless made upon a trust, either express or implied, that it shall be devoted to uses which the law recognizes as charitable, the omission from a bequest of the words 'in trust' is not material, where the intention is clearly manifested that the whole property shall be applied by the legatee for the benefit of other persons than himself."

In 2 Pomeroy's Equity (1st Ed.), § 1018, it is said: "In express private trusts there is not only a certain trustee who holds the legal estate, but there is a certain specified *cestui que* trust clearly identified or made capable of identification by the terms of the instrument creating the trust. It is an essential feature of public or charitable trusts that the beneficiaries are uncertain, a class of persons described in some general language, often fluctuating, changing in their individual numbers, and partaking of a quasi public character."

In section 1019, Mr. Pomeroy says: "In order that a trust may be charitable, the gift must be for the benefit of such an indefinite class of persons, that the charity is really a public and not a mere private benefaction. On the other hand, in a public trust the designation of the chari-

table use and of the beneficiaries must be sufficiently certain
and descriptive to indicate the intention of the donor; the
language must not be so general and vague as to leave both
the beneficiaries and the purposes and objects completely
to the judgment and choice of the trustees or of the Court."

It appears from the admitted facts in the case that the
testator, Dr. Young, had, for many years, practiced his
profession as a physician in and around Fairfax, where he
resided.   He was a physician of large experience, and his
practice was general. A large part of his practice was among
the colored people of the community.   His patients came
from various sections of the community and were treated
at his own home, which seems to have been used as a quasi
hospital, where he kept his own medicines, which were dis-
pensed to his patients when they came to him for treat-
ment.   It appears that he left no wife or children surviv-
ing him.   During his long life of medical service of more
than 40 years, he had accumulated quite a large estate for
that section of the country in which he lived.   His will was
made on the 13th day of July, 1920, and he died on the
25th day of July, 1920.   The codicil to his will was dated
the 18th day of July, 1920, one week before the date of
his death, and by this codicil, he confirmed the will except
so far as it might be inconsistent with his codicil.   It op-
pears from his codicil that his mind adverted to that pro-
vision in his will, by which he sought to erect and establish
a hospital in the town of Fairfax.   In his will he says,
"all the residue of my estate—I give and devise for the
purpose of establishing, building and equipping a public
hospital in the town of Fairfax for the treatment of white
and colored patients."   It will be noted that Dr. Young
used the words "public hospital," and it is evident that he
used these words advisedly to distinguish the hospital in-
tended from a private hospital.   In Black's Law Dictionary,
the word "public" is defined as follows:   "Pertaining to a
state, nation, or whole community; proceeding from, relat-

ing to, or affecting the whole body of people or an entire community. Open to all; notorious. Common to all or many; general; open to common use. *Morgan v. Cree,* 46 Vt., 786; 14 Am. Rep., 640; *Crane v. Waters* (C. C.), 10 Fed., 621; *Austin v. Soule,* 36 Vt., 650; Appeal of Eliot, 74 Conn., 586; 51 Atl., 558; *O'Hara v. Miller,* 1 Kulp (Pa.), 295."

And further as follows: "As a noun, the word 'public' denotes the whole body politic, or the aggregate of the citizens of a state, district, or municipality. *Knight v. Thomas,* 93 Me., 494, 45 Atl., 499; *State v. Luce,* 9 Houst. (Del.), 396, 32 Atl., 1076; *Wyatt v. Irrigation Co.,* 1 Colo. App., 480; 29 Pac., 906."

In an extensive note to the case of *Hoeffer v. Clogan,* (Ill.), reported in 63 Am. St., Rep., at page 262, it is said: "The founding and maintenance of hospitals and asylums of various kinds, and homes for destitute and friendless children, and the aged and infirm, constitute charitable uses or trusts, and bequests, devises, or other gifts for such purposes will be upheld in equity with a strong hand. Trusts for such purposes may be established and carried into effect, when, if not of a charitable nature, they could not be supported."

The annotator cites the case of *Jones v. Habersham,* 107 U. S., 174; 2 Sup. Ct., 336; 27 L. Ed., 401, and also cases from Minnesota, Connecticut, Illinois, Massachusetts, California, Delaware, Indiana, Iowa, Missouri, and New Jersey and other States.

In 5 R. C. L., at page 334, it is stated: "It is universally held that a gift of property for establishment of a hospital is a valid charitable gift and that the rule against perpetuities does not apply. The establishment of hospitals is in fact one of the objects enumerated in the statute of charitable uses."

From the foregoing statement of the law and the circumstances surrounding Dr. Young, as above set forth, it

appears to me that the language used by Dr. Young clearly shows that it was his intention to establish a public charitable trust for the erection, establishment, and equipment of a public hospital at Fairfax. It is true that his will was not drawn by an attorney at law, but I can conceive of no language that would have rendered clearer his intention than the words used by him to express his plain intention in his will. I am bound to hold, therefore, that Dr. Young intended, as shown by his will, to establish a public charitable trust.

(2) Having held that Dr. Young intended to establish a public charitable trust, to wit, to establish, build, and equip a public hospital in the town of Fairfax for the treatment of white and colored patients, the next and most serious question to be determined is, can such charitable trusts be carried out and enforced under the terms of his will, or under the ordinary jurisdiction and power of the Court of equity?

It is not enough merely that a testator intends to establish a charitable trust but it is essential that the object and purpose of such a trust, as well as the beneficiaries thereof, shall have been expressed with such reasonable clearness and definiteness as to render them enforceable, if necessary, by the Court.

As to the purpose intended by Dr. Young, I do not think there can be any question but that he has expressed such purpose by the clearest language. He says: "For the purpose of establishing, building, and equipping a public hospital in the town of Fairfax." Here the building to be established and equipped is plainly specified to be a "public hospital," the place where it is to be located is in the town of Fairfax, the place where he resided, as it seems, during his whole professional life. The object intended and to be subserved by the erection of such hospital is "for the treatment of white and colored patients," such white and colored patients are the beneficiaries of the trust

to be established.  Having plainly designated the hospital
as a "public hospital," and having designated its location
in the town of Fairfax, where he lived, and, in view of the
definition of the word "public," I think it is reasonably cer-
tain that Dr. Young intended the beneficiaries to be such
white and colored patients as lived in or came from the
territory surrounding the town of Fairfax.  The admitted
facts show that such persons had been treated by him, dur-
ing his lifetime, at his home in the town of Fairfax.  It
was natural, therefore, for him to have in mind, when he
specified white and colored patients, such persons as had
been accustomed to come to him for treatment.

It is contended by plaintiffs that this provision of his
will cannot be carried out, because no trustee was appointed,
and no scheme of execution of the trust was devised by
him.  It is true that Dr. Young did not specify in detail
how the trust was to be executed or carried out, but, in his
will, he expressly authorized and empowered his executors
"to carry out this provision of my will according to their
best judgment."

In the consideration and determination of this very im-
portant issue, I will follow the order in which these con-
tentions are set forth, in the very able and exhaustive.
arguments of plaintiff's counsel.

A.  It is contended that this provision of Dr. Young's
will is invalid because there is no trustee with title and
power in the premises; that the devise is "for the purpose
of a charity without the appointment of a trustee; that
it is not a devise "to" any person, association, or corpora-
tion in existence or in contemplation; that the executors
are not trustees of the alleged charitable trust, and finally
that a trustee cannot be appointed by the Court because
there is no valid trust for him to execute; that there are
no beneficiaries; and that there is no scheme of execution

I understand the contention of plaintiffs to be that the
words used by Dr. Young, in this provision of his will

are not sufficient to pass the title out of him and, there-
fore, with reference to his residuary estate, he died in-
testate because the devise is not to trustees for the purpose
of erecting and equipping a hospital, but, on the contrary,
is simply a gift or devise for a charitable purpoose.

It appears to me that this contention is unsound, be-
cause, if a valid trust has been declared which can be carried
out by the Courts, then even the heirs at law would take
title to the property impressed with such trust. Besides
this, it seems to me that the title passed by implication to his
executors, as trustees, because he expressly conferred upon
them power to carry out that provision of his will. To
the extent that the power conferred upon these executors
was not a power pertinent to their office, as executors, of
his estate, it was a power coupled with a trust, and the
parties named as executors, by implication and operation
of law, became trustees for the purpose of carrying out
the intention expressed in the will of the testator. The
case of *Kemmerer v. Kemmerer,* 233 Ill., 327; 84 N. E.,
256, 122 Am. St. Rep., 169, sustains this principle.

In that case, it appears that testator, after making certain
provisions for his wife, whom he appointed executrix, pro-
vided that all his "personal and real estate shall be used
for an orphan's home, for the friendless poor of all de-
nominations. This home shall be controlled by the Presby-
terian churches of Central Illinois." In his will, he also
provided that his wife, as executrix, "shall have full power
to execute this my last will." It was urged in that case
that such gift for charity could not be sustained because no
trustee had been appointed to administer the trust. In dis-
posing of this contention, the Supreme Court of Illinois
(233 Ill., 327; 84 N. E., 256, 122 Am. St., 174) said:

"We think it clear that duties are conferred upon Sarah
A. Kemmerer by the last will and testament of Philip B.
Kemmerer, deceased, which belong to a trustee. Land is
to be sold to produce a fund with which to erect an orphan-

age; land is to be rented with which to produce a fund with which to support the orphanage when erected, and the orphanage is to be erected; and the law is well settled that where an executor or executrix is charged with duties which do not properly belong to them as such, but to a trustee, such executor or executrix will be held to be a trustee. The duties hereinbefore referred to pertain to those of a trustee, and are included and are contained within the powers conferred upon the executrix 'to execute this my last will.' In *Welch v. Caldwell,* 226 Ill., 488, 80 N. E., 1014, the testator created a trust for charitable purposes and named his wife as executrix. He charged his wife with duties properly belonging to a trustee, although he did not designate her as trustee, and it was held that the trust was not defeated by reason of the fact that the testator failed to designate his wife, in express terms, as trustee of the funds set aside for charitable purposes. We think the trust for charity created by Philip B. Kemmerer, deceased, is not void by reason of the failure of the testator to appoint a trustee to execute the trust in express terms, and that Sarah A. Kemmerer, although named only as executrix, has the power conferred upon her, as trustee, to execute and carry into effect the provisions of said will in so far as it is necessary to obtain the funds with which to erect and support said orphanage, and that in case Sarah A. Kemmerer should fail or refuse to act, or should die, a Court of chancery would not permit the trust for charitable purposes created by Philip B. Kemmerer, deceased, by his last will and testament, to fail for want of a trustee, but that such Court would appoint a trustee to act in her stead. *Hoeffer v. Clogan,* 171 Ill., 462; 63 Am. St. Rep., 241; 49 N. E., 527; 40 L. R. A., 730; *Welch v. Caldwell,* 226 Ill., 488, 80 N. E., 1014.

"In creating a trust the testator need not employ the words 'trust' or 'trustee.' If he has named a person in his will and has directed him to carry out all or a portion

of the provisions which have been made for the benefit of others therein, the person thus named will be held to be a trustee, and if he cannot carry out the provisions of the will except the legal title to the property be held to be in him as trustee, then he will be held, by implication, to hold the legal title to the property which he is directed to convey. 2 Underhill on Wills, § 781; 1 Perry on Trusts, § 262; 2 Pomeroy's Equity Jurisprudence (2d Ed.), § 1011; *Hale v. Hale,* 125 Ill., 299; 17 N. E., 470; *Olcott v. Tope,* 213 Ill., 124, 72 N. E., 751."

In 5 Ruling Case Law, p. 314, the rule is stated as follows: "In creating a trust the testator need not employ the words 'trust' or 'trustee.' If he has named a person in his will and has directed him to carry out all or a portion of the provisions which have been made for the benefit of others therein, the person thus named will be held to be a trustee, and it is well settled that where an executor is charged with duties which do not properly belong to him as such, but to a trustee, such executor will be held to be a trustee. A devise or bequest for a charitable purpose will not fail because of the mere misnomer of the trustee or donee, where the meaning can be gathered with reasonable certainty from the instrument itself."

In 5 American and English Encyclopedia of Law, 920, it is said: "It is well settled that where a charitable gift is made to no certain trustees, or to trustees incapable of holding the legal estate, the gift is not defeated on that account. The legal estate, in such a case, is regarded as in abeyance, or as vested in the heirs or executors of the donor for the use of the beneficiaries, or the Court will appoint a trustee to carry out the charitable purpose of the testator."

In 1 Perry on Trusts, § 722, the author says: "If a donor makes a gift in trust for a particular charitable purpose, as to establish a particular school, hospital, asylum, or other charitable institution, and appoints no trustee, or

if the trustee appointed by him is incapable of taking the gift, and of acting in that behalf, or if the trustee dies before the testator, or declines to act, or if trustees are named or appointed who are not in esse, but are to come into existence thereafter, as by an act of incorporation, Courts of equity, in the exercise of their ordinary jurisdiction, can establish the charity; for it is their invariable practice not to allow a legal and valid trust to fail for want of a trustee. Therefore Court will appoint trustees in such cases to take up and carry out the clear purposes of the donor, and they will order the heir or legal representatives to hold the fund upon the declared trust until trustees can be appointed to execute the trust as contemplated. In exercising this jurisdiction, Courts are called upon to exercise no extraordinary or prerogative powers. In matters thus far discussed in the four preceding sections, there is no room for the *cy pres* doctorine, as it is called, as a judicial doctrine. So far as Courts have sustained charities, as Courts, they have sustained them within the strict limits of ordinary chancery jurisdiction."

In this case it appears that the testator clearly intended to establish a charitable trust. The power to execute the trust was vested in certain parties named by him as executors. The testator does not say that this power is vested in them on account of any special trust or confidence, and the power is clearly not a naked power that would be extinguished upon the death of the persons named as executors. It seems to me, therefore, that it was clearly a power coupled with the trust and, being a public charitable trust, it is evident that it was intended to be a permanent trust. The distinction between a mere naked power and trust is marked and obvious. Powers are never imperative; they leave the act to be done at the will of the party to whom given. On the other hand, trusts are always imperative and are obligatory on the conscience of the person intrusted. *Stanley v. Colt,* 5 Wall, 119, 18 L. Ed., 502; 21 R. C. L., 775;

*Bredenburg v. Bardin,* 36 S. C., 203, 15 S. E., 372; *Dick v. Harby,* 48 S. C., 516, 26 S. C., 900.

A power not coupled with a trust, if not executed before the death of the trustee, it seems is extinguished at law, but the trust is held in equity to service, and a new trustee will be appointed to execute the same. 21 R. C. L., 809; *Fontain v. Ravenel,* 17 How., 369; 15 L. Ed., 87.

In discussing trusts that arise by construction of powers, Mr. Perry, in his work on Trusts, § 248 (1st Ed.), says: "In dealing with the cases that have arisen upon these inquiries, Courts have distributed powers into mere powers, and powers coupled with a trust, or powers which imply a trust. Mere powers are purely discretionary with the donee; he may or may not exercise or execute then at his sole will and pleasure, and no Court can compel or control his discretion, or exercise it in his stead and place if for any reason he leaves the powers unexecuted. If the donee executes the powers, but executes them in a defective manner, Courts may aid the execution and supply the defects, but they cannot exercise or execute mere naked powers conferred upon a donee. It is different with powers coupled with a trust or powers which imply a trust. In this class of cases the power is so given that it is considered a trust for the benefit of other parties, and when the form of the gift is such that it can be construed to be a trust, the power becomes imperative, and must be executed. Courts will not allow a clear trust to fail for want of a trustee; nor will they allow a trust to fail by reason of any act or omission of the trustee; therefore, Courts will not allow a trust to fail, or to be defeated by the refusal or neglect of the trustee to execute a power, if such power is so given that it is reasonably certain that the donor intended that it should be exercised. There are mere powers and mere trusts. There are also powers which the party to whom they are given is intrusted with and required to execute. Courts consider this last kind of power to par-

take so much of the character of a trust to be executed, that they will not allow it to fail by the failure of the donee to execute it, but will execute it in place of the donee. Lord Hardwick observed that such powers ought rather to be called trusts than powers."

Again in the same work with reference to the powers of trustees, the author, in section 473, says: "Where an express trust is created, certain powers are conferred upon the trustees to be executed by them. These powers are divided in the first instance into general and special powers. General powers are those, which by construction of law are incident to the office of trustee. Every trustee must have them, whether they are named or not in the instrument creating the trust, in order that he may perform the duties imposed upon him. Special powers are such special directions and authority as the settlor gives to his trustees in order to carry out his special purposes in instituting the trust. Special powers are again divided into mere naked powers—to be exercised by trustees at their sole discretion, and according to their own judgment, and to be forever discharged and obsolete if the trustees do not see fit to execute them—and powers in the nature of a trust. These latter powers are sometimes coupled with an interest and sometimes not. But, if they are in the nature of a trust, they are imperative on the trustees and must be executed. If the trustees neglect or refuse to execute them, or die without performing them, Courts of equity will execute them, or compel them to be executed."

It is my opinion, therefore, that Dr. Young not only intended but did create a valid public charitable trust, and that the parties named as executors, having been vested with full power and authority to carry out and execute the trust must necessarily have taken such estate as would enable them to execute the power conferred upon them, the beneficial use, of course, being in the beneficiaries of the trust. I do not think that the power conferred upon them was

a mere power connected with their office as executors, but rather they became the trustees independent of their office as executors, and the power conferred upon them was coupled with the trust. The execution of power, therefore, became imperative and would survive the death of the executors, and the Court of equity has ample power and authority to appoint new trustees in their stead.

A valid trust having been created, it is a rule of equity of almost universal application that equity will not permit a trust to fail for lack of a trustee. This is especially true with regard to charitable trusts or charitable uses. *Gibson v. McCall,* 1 Rich., 174; *Calhoun v. Furgeson,* 3 Rich. Eq., 160; *Attorney General v. Jolly,* 1 Rich. Eq., 99, 42 Am. Dec., 349; *Bates v. Taylor,* 28 S. C., 480, 481, 6 S. E., 327; note 14 L. R. A. (N. S.), 109.

It is next contended by the plaintiffs that the provision of testator's will is void because there are no beneficiaries designated, and, even if a class of beneficiaries is mentioned, that there is no implied power of selecting the beneficiaries therefrom conferred upon any trustee by testator's will. Under this particular head, they contend that no power or method of selecting beneficiaries is declared in the will that the Court might vest in a trustee of its appointment; that there is no class of territory from which such beneficiaries are to be selected; that the devise is not to an association or corporation, which could dispense the charity according to its rule, and finally that no part of the fund has been set apart for the maintenance and operation of the hospital.

I do not think that the provision of testator's will with reference to beneficiaries is so indefinite and uncertain that his intention cannot be carried out by the trustees appointed by him. In this connection it is well to remember that the undisputed facts show that the testator, during his lifetime, had treated his patients, both white and colored, at his own home. He doubtless saw and fully realized the

benefits derived by his patients from having such treatment, and I think his evident purpose was to establish a public hospital in the town of Fairfax, where he lived so long, in which the same class of patients, whom he had treated so long at his home, might continue to receive such treatment. It is significant that he specified in his will the same class of patients that he himself had been accustomed to treat in his home; namely, white and colored patients. It was unnecessary, as well as impossible, for him to have specified the individual patients who would receive benefits of the public benefaction conferred by his will. He therefore designated a sufficiently definite and certain class of beneficiaries who should receive treatment in the hospital he proposed to establish. I think that this is all that is required by the law in such cases.

As we have heretofore seen, one of the essential elements of a public charity is that it is not confined to a privileged class of individuals but is open to the indefinite public. It is this indefinite and unrestricted quality that gives it its public character. The beneficiaries of a charitable trust need not be defined in terms so definite as to exclude all possibility of error in selecting the individual beneficiaries. The beneficiaries in all public charities must necessarily be described in general terms. It is sufficient in such cases if the testator has fixed the classes of beneficiaries with reasonable certainty so that the vagueness and uncertainty as to the numbers of individuals composing the particular class, will not render the public charity void. 5 R. C. L., 309; note in 14 L. R. A. (N. S.), 129.

In *Harrington v. Pier,* 105 Wis., 485, 82 N. W., 345, 50 L. R. A., 307; 76 Am. St. Rep., 924, the Supreme Court of Wisconsin makes an exhaustive review of many of the authorities in this country on the subject of charitable trusts. In that case (105 Wis., 514, 82 N. W., 355, 50 L. R. A., 319; 76 Am. St. Rep., 946), after reviewing many of the cases, the Court says: "It follows that in-

definiteness of beneficiaries who can invoke judicial authority to enforce the trust, want of a trustee if there be a trust in fact, or indefiniteness in details of the particular purpose declared, the general limits being reasonably ascertainable, or indefiniteness of mode of carrying out the particular purpose, does not militate against the validity of a trust for charitable uses. Given a trust, with or without a trustee, a particular purpose—as education, or relief of the poor, as distinguished from a bequest to charity generally—and a class great or small, and without regard to location, necessarily, as 'worthy indigent females,' or 'indigent young men studying for the ministry,' or 'resident poor,' or 'indigent children of Rock County,' or 'the girls and boys of California' (People ex rel. *Ellert v. Cogswell,* 113 Cal., 129), and we have a good trust for charitable uses. The Court, through its strictly judicial powers, may fill the office of trustee if necessary. The trustee can select the immediate beneficiaries or objects within the designated class and scheme. He can determine upon the details necessary to effect the intention of the donor within the general limits of his declared purpose, and execute the trust accordingly; and the proper public agencies if necessary, can invoke judicial power to enforce such execution. At no step is the Court required to exercise *cy pres* power in the sense of prerogative authority, or at all, except as the term is found used in regard to those liberal rules of judicial construction applied by Courts of equity to charitable trusts, well exemplified in *Webster v. Morris,* 66 Wis., 366, 57 Am. Rep., 278, for determining the intent of a donor in creating a trust for a designated proper charitable purpose."

The Court also holds that this can be done without the application of the *cy pres* doctrine, as such power was inherent in the Courts before the statute of Elizabeth. The statute of Elizabeth is not in force in Wisconsin, and its Courts do not apply the *cy pres* doctrine. In that respect,

the state of the law of Wisconsin is the same as that in South Carolina.

In the same case, in referring to what had been decided in a previous case by that Court, 105 Wis., 503, 82 N. W., 351; 50 L. R. A., 315; 76 Am. St. Rep., at page 938, it is said: "Courts here, as anciently, look with favor upon all donations to charitable uses, and give effect to them where it is possible to do so consistent with rules of law, and to that end the most liberal rules the nature of the case will admit of, within the limits of ordinary chancery jurisdiction, will be resorted to if necessary. It is sufficient if there be a trust and a particular charitable purpose as distinguished from a gift to charity generally. The Court may supply the trustee to administer the trust; the trustee may select the beneficiaries from within the general class named by the donor, and when necessary, may work out the details of the declared purpose within its stated general limits. Certainty of beneficiaries who can invoke judicial power to enforce the trust is not only unnecessary, but is inconsistent with the very nature of a trust for charitable uses, in that the beneficiaries, in a general sense, are the members of the public at large. A public charity, within the rule mentioned, is sufficiently definite as to purpose, if its general nature be clearly stated, or it can be made otherwise certain by the trustees clothed with the power of administering the trust within the limits of the declared purpose. It is sufficiently definite as to immediate beneficiaries by the power of selection lodged expressly or impliedly in the trustee appointed by the donor, or by the Court where there is a trust but no trustee. If the trustee abuse his power, there is a complete remedy by the exercise of the visitorial power of the state."

See on this point the following additional authorities: *Hunt v. Fowler,* 121 Ill., 269, 12 N. E., 333, 17 N. E., 491; *Kemmerer v. Kemmerer,* 233 Ill., 327, 84 N. E., 256; 122 Am. St. Rep., 176; *Grant v. Saunders,* 121 Iowa, 80,

95 N. W., 411, 100 Am. St. Rep., 313, 314; *Russell v. Allen*, 107 U. S., 166, 2 Sup. Ct., 327, 27 L. Ed., 399; *Coint v. Comstock,* 51 Conn., 352, 50 Am. Rep., 29; *Snider v. Snider,* 70 S. C., 558, 559; 50 S. E., 504; 106 Am. St. Rep., 754; *Attorney General v. Jolly,* 1 Rich. Eq., 99; 42 Am. Dec., 349; Trusts, § 687, 5 R. C. L., 309, 310.

It would be interesting to quote from some of these authorities cited, but as most of these decisions are from other states, I do not think it necessary to do so.

In my opinion, these contentions of the plaintiffs cannot be sustained under the law as it is declared by our own Supreme Court in the case of *Dye v. Beaver Creek Church,* 48 S. C., 445, 26 S. E., 717, 59 Am. St. Rep., 724. In that case, the testator devised all of his property to his wife for life, with power of disposal during her lifetime, but provided that if there should be anything left at her "deceast," "I give and bequeath to the Beaver Creek Church for poor children for their tuition." By reference to that case, it will be noted that some of the same contentions were urged against the validity of this devise to Beaver Creek Church; one of the contentions being that it was so vague, indefinite and uncertain as to objects and beneficiaries of the uses that it was void. In disposing of that objection, in 48 S. C., at page 457, 26 S. E., 722, 59 Am. St. Rep., 724, Mr. Justice Gary, now Chief Justice Gary, said: "We shall not attempt to review the many and conflicting authorities bearing upon the question under consideration, but state the following principles deducible from them: First. If a trustee is appointed by the testator, and the will shows that the object of the devise, though expressed in general terms, is for a charitable use, the trust will be declared valid. In such a case the duty devolves upon the trustee of devising a scheme for carrying the trust into effect. Second. If a trustee is not appointed by the testator and the will does not declare the manner in which the devise is to be made effectual, equity will not administer the trust. The reason a trustee

is allowed to enforce a trust, the object of which is only expressed in general terms, is that in exercising his discretion he carries out the intention of the testator. But when there is no trustee appointed to exercise this discretion in devising a scheme for the execution of the trust, the Court of equity can look alone to the will, and if it does not show the intention of the testator, parol testimony is inadmissible, and the trust must fail."

Chief Justice Gary also distinguished the case of *Brennan v. Winkler,* 37 S. C., 457, 16 S. E., 190, from the case then under consideration. In the Brennan Case, as he points out, the words used in creating the trust were merely precatory, and besides there was no trustee appointed by the testatrix. Hence the Court held that the alleged trust was a nullity.

The beneficiaries, under the will of Dye, were "poor children," and the object of the charity was their "education." The Court held that the beneficiaries were a definite class and that the object of the devise was charitable. If a devise for the benefit of "poor children" as the beneficiaries of a charity was a sufficiently definite class of beneficiaries to sustain the devise for charitable uses, it seems to me clearly that the class of beneficiaries designated in Dr. Young's will are even more certain, definite and specific.

To hold that the class of beneficiaries specified in Dr. Young's will are so uncertain and indefinite as to render the trust void cannot be reconciled with the decision of our own Supreme Court in the case of *Dye v. Beaver Creek Church,* in which they held that the beneficiaries designated as "poor children" were a sufficiently definite class.

I think that the provisions of Dr. Young's will fall under the first of the general principles enunciated by Justice Gary (48 S. C., on page 457, 26 S. E., 722, 59 Am. St. Rep., 724), where he holds that "if a trustee is appointed by the testator, and the will shows that the object of the devise, though expressed in general terms, is for a charitable use, the trust will be declared valid. In such a case, the duty

devolves upon the trustee of devising a scheme for carrying the trust into effect."

The provisions of Dr. Young's will, as I have held created a public charitable use or trust for the purpose of establishing, building and equipping a public hospital for the treatment of white and colored patients therein. The beneficiaries belong to the classes plainly expressed by him, and in my opinion, these classes are not so uncertain and indefinite as to render the provisions of his will null and void. Not only is a public charitable trust plainly intended and expressed, but full power and authority are vested in certain persons as trustees to execute the trust created. It is true that these trustees are also executors of the will, but the evident purpose and intention of Dr. Young was to create a permanent public charity, and, as the powers conferred upon the executors are coupled with the trust, a Court of equity has ample power to appoint other trustees to execute the trust upon the death of the executors. It is the contention of plaintiffs that there is no express power given of selecting the beneficiaries by any trustee whom the Court might appoint. It seems to me, however, that under the case of *Dye v. Beaver Creek Church,* the duty would devolve upon the trustees to devise a scheme for carrying this trust into effect, which would clearly give to them at least the implied power of selecting the beneficiaries from the classes named in the will. I therefore hold that the beneficiaries are described in sufficiently certain and definite terms to comply with the law of charitable bequests and devises.

It is finally contended by the plaintiffs that the will does not provide any scheme for the execution of the trust in that there is no provision made or scheme provided for the maintenance and operation of the hospital proposed to be established, and that, under the express terms of the will, the whole of the fund must be devoted to establishing, building, and equipping the hospital in question.

I do not think that, under the law governing charitable uses and trusts, it is necessary to define in express terms the details for the execution of a valid trust which has been expressed in general terms. If the testator gives power to a trustee to carry out and execute the general provisions of the trust, then it seems to me the trustee has implied power to do everything necessary to carry out the intention of the testator. In other words, where there is a plainly declared charitable trust and a trustee appointed with power to act, as is stated in the Dye Case, "the duty devolves upon the trustee of devising a scheme for carrying the trust into effect."

As to the contention that no scheme has been provided for the maintenance and operation of the hospital, and that no part of the fund can be used for that purpose, it might be sufficient to say that it appears to have been the intention of Dr. Young merely to provide a hospital and equip it for the use of the beneficiaries he has mentioned. In other words, it seems to me that his main purpose and intention in the establishment of the hospital was to afford accessible hospital facilities to the public in and around the town of Fairfax. He had, during his lifetime, treated the same class of patients described in his will in this town. His intention, as disclosed by his will, was to provide a hospital after his death where such patients might continue to receive the same kind of treatment. Even if no fund was provided by him for the maintenance and operation of such hospital, that does not destroy the validity of the charitable trust created by him, if otherwise valid. I do not think that the heirs at law or any other parties can assail the validity of a valid charitable trust upon the ground that the trust does not provide everything necessary. If such a contention is sound, then almost every charitable trust might be assailed by interested parties upon the ground that the trust declared by the testator was visionary, impractical, and wasteful. If the residuary estate of Dr. Young is sufficient for the establishment

and equipment of the hospital intended by him, and also for the maintenance and operation thereof, then I think the trustees, under the law, might have the implied power to maintain and operate it. However that may be, I think it is sufficient to say that the establishing, building and equipping of a public hospital in a town is in itself a valid public charity.

In the case of *Wachovia Banking & Trust Co. v. Ogburn,* 181 N. C., 324; 107 S. E., 238, decided by the Supreme Court of North Carolina, May 11, 1921, it is expressly held "that the validity of a charitable trust does not depend on the adequacy of the fund to execute it to the full extent of the intention of testator and that where the purpose of testator in creating a charitable trust was the creation of an institution for the public benefit it was not illegal."

In that case the validity of the trust was assailed by the heirs at law upon the ground that the sum available and applicable to the trust was inadequate, and that the use of such fund in an effort to carry out the trust would be to waste that portion of the testator's estate without accomplishing the intention of the donor, and upon the further ground that the purpose and plan of the charity was uncertain and indefinite and presented an impracticable and visionary scheme.

In that case (181 N. C., 328; 107 S. E., 240), Chief Justice Clarke says: "The inadequacy of the trust fund, if it were inadequate, cannot in any way affect the validity of the trust. Whether it will be inadequate or not depends entirely upon the extent of the plans adopted, and we cannot presume in advance that the executor will not make his plans wisely, and within the scope of his funds. We must presume that he will plan according to the funds devised, or to be expected; in short, that the trustees will 'cut the coat according to the cloth.'"

Whether the purpose of the testator was wise or not is not for the Court. The trust created by the testator is a

valid charitable trust, and the Courts will, if necessary, so supervise its administration as to accomplish the purpose expressed in the will.

In *University v. Gatling,* 81 N. C., 509, the testator provided that the fund should endow five scholarships in the University of North Carolina. The fund was insufficient to carry out this purpose, but the Court held that this bequest was valid, and should go as far as possible to carry out the will of the testator. This was not the doctrine of the *pres,* which is to apply the sum to some other purposes "equally as good," but is the application of the fund to the very purpose named, as far as it will go.

Chief Justice Clarke also points out that the same contention had been made in the Gerard Will Case but was not sustained by the Court.

It seems to me to be true, as a general proposition, that even if no part of Dr. Young's estate can be lawfully used for the maintenance and operation of the hospital in question, still the mere establishing, building and equipping of such hospital constitutes a great and valid and beneficial public charity in any town in which it might be located.

Unquestionably patients of the classes mentioned in his will would not object to paying the necessary fees of treatment in such a hospital when they could obtain the beneficial results which can be only obtained through hospital facilities.

The fact that, after the erection and equipment of the hospital, patients might be required to pay for treatment does not deprive the institution of its character as a public charitable hospital. It has been frequently held that the fact that pay is received from patients does not deprive a hospital of its character as a public charity.

In *Lindler v. Columbia Hospital,* 98 S. C., page 30; 81 S. E., 513, our own Supreme Court, with reference to this matter, says:

"The respondent next relies upon the fact that the patient was a pay patient. In order to show that this proposition

is untenable, it is only necessary to refer to the case of *Jensen v. Maine Eye and Ear Infirmary,* 107 Me., 408; 78 Atl., 898; 33 L. R. A. (N. S.), 141, and *Duncan v. Nebraska Sanitarium,* 92 Neb., 162; 137 N. W., 1120; 41 L. R. A. (N. S.), 973; Ann. Cas., 1913E, 1127, in which it was held that a hospital supported mainly by charity does not lose its character as a charitable institution by the fact that it accepts compensation and makes a charge for the use of rooms to those who are able to pay for them."

See, also, the following additional authorities: *O'Brien v. Physician's Hospital Association,* 96 Ohio St., 1; 116 N. E., 975; L. R. A., 1917F, 741; *McDonald v. Mass. General Hospital,* 120 Mass., 432; 21 Am. Rep., 529; *Taylor v. Provident Hospital Association,* 85 Ohio St., 90; 96 N. E., 1089; 39 L. R. A. (N. S.), 427; and authority cited; *Roosen v. Peter Bent Brigham Hospital,* 235 Mass., 66; 126 N. E., 392; 14 A. L. R., 566.

As to that provision of the codicil to Dr. Young's will, in which he requests the Fairfax Library Association to cooperate with his executors in providing a nurses' home in connection with the hospital, it seems to me that this is a mere detail that might be carried out by the parties in the execution of the general purpose and intention of the testator. If the establishment of a nurses' home is an essential feature in the equipment of the hospital for the administration and carrying out purpose, then the erection of such home would be a part of the general scheme expressed by the testator in establishing, building and equipping the hospital.

I have been greatly impressed by the able and exhaustive arguments of plaintiff's attorneys and with the zeal and learning with which they have urged the invalidity of the provisions of Dr. Young's will here under consideration. I have examined the authorities cited by them, and, while they are plausible and apparently sustain the contentions, still upon a close examination of the facts in those cases

I do not think they are applicable to the devise here in question.

It would be interesting to review at length the many authorities cited by them, but I will only briefly refer to a few of them to show that, in my opinion, they are inapplicable. With reference to the position taken by them that the powers contained in Dr. Young's will belong to the executors by virtue of their office, and that such powers be extinguished upon the death of the executors, they cite *Dick v. Harby,* 48 S. C., 516; 26 S. E., 900; *Reeves v. Tappan,* 21 S. C., 1; *De Saussure v. Lyons,* 9 S. C., 492; *Smith v. Winn,* 27 S. C., 591; 4 S. E., 240; *Singleton v. Cuttino,* 105 S. C., 44; 89 S. E., 385, and other causes of similar import. By reference to these cases, it will appear that the trusts there under consideration were either private trusts or that the words intended to create the trusts were merely precatory words, as in *Drennan v. Agurs,* 98 S. C., 391; 82 S. E., 622.

In the case of private trusts, the rule of law is more strictly applied than in public charitable trusts, and I do not think that these authorities mentioned are strictly applicable to the public charitable trusts under consideration here. Again, some of the cases cited by counsel are from New York, Maryland, and Virginia. In these States, as pointed out by the Supreme Court of Kentucky, in the case of *Thompson v. Brown,* 116 Ky., 106; 75 S. W., 211; 24 Ky. Law Rep., 1073; 62 L. R. A., 404; 105 Am. St. Rep., 196, it is held "that Courts of Equity [in those States] have no greater jurisdiction to enforce public than private trusts." I do not understand that this is the law in South Carolina, where much more liberal rules are in force.

The case of *Jones v. Patterson,* 271 Mo., 1; 195 S. W., 1004; L. R. A., 1917F, 660, I do not think applicable because in that case the devise and trust were not sufficient, as the Court held, to create a charitable trust. The devise therein, after the life estate, was expressed in mere precatory

words. In Dr. Young's will, the trust is expressed in more certain and definite terms and clearly constitutes a valid charitable trust under the laws of South Carolina.

The case of *Robbins v. Hoover,* 50 Colo., 610; 115 Pac., 526, in my opinion, is not applicable to the facts in the present case, for the reason that the devise for charitable use, under consideration in that case, which was for a hospital building, was made upon the condition that the city of Boulder would support and maintain the hospital, otherwise the money bequeathed should revert to testator's legatees.

The Supreme Court of Colorado held that this bequest was not valid because its vesting was made to depend upon an impossible and legally unenforceable condition precedent. The Court held that the Board of County Commissioners or other corporate authorities possess no power to appropriate money for the purpose mentioned.

Counsel for plaintiff also cites among other authorities the case of *Ewell v. Sneed,* 136 Tenn., 602; 191 S. W., 131; 5 A. L. R., 303. That case, it seems to me, is not applicable because, under the law as applied by the Courts in Tennessee, it is held that the rule of equity, which will not allow a trust to fail for want of a trustee, has no application to charitable trusts in Tennessee, and it is the law in Tennessee also that no trust is valid unless a trustee is appointed at the time of the creation of the trust, and in *Ewell v. Sneed* no such trustee was appointed by the testator to carry out the trust. Besides this peculiar rule prevailing in Tennessee is against the general rule and great weight of authority prevailing in other jurisdictions. See note 5 A. L. R., pages 316–319, where numerous authorities in various States are cited to the contrary.

In conclusion, I do not think that the spelndid charity and public benefaction intended to be established by Dr. Young should fail if it can be sustained upon well-settled principles of law applied to the facts in that liberal and favorable spirit

prevailing in our system of equity jurisdiction. It should not be destroyed except upon grounds of the clearest invalidity and upon the most persuasive legal authority.

After a patient consideration of all the facts, and an examination of the law, aided by the able and exhaustive arguments of counsel on both sides of this very interesting issue, I am convinced that the grounds upon which plaintiffs assail the devise in Dr. Young's will here in question, while very plausible, are unsound, and should not be sustained by the Court. As was well said by Judge Marshall of the Supreme Court of Wisconsin in the leading case of *Harrington v. Pier,* 105 Wis., 490; 82 N. W., 346; 50 L. R. A., 311; 76 Am. St. Rep., at page 927: "The importance, always recognized, of protecting the individual right of every person to devote his private fortune to the public good so far as practicable without the violation of any legal principle and of making all efforts to that end effective to accomplish the donor's purpose, cannot be overestimated. Few things occur in the administration of justice more lamentable than the occasional strangling of some wise and noble purpose to devote the savings, or part of them, of a life of industry, to the upbuilding of the human race at some point or in some field, and the diversion of what was intended for some public benefit to private use directly contrary to the will of him whose last days were solaced with the thought that his public benefactions would build an enduring monument to his memory in the hearts of grateful people, and the hope of eternal rewards for such well-doing believed to be waiting for bestowal. That idea prevailed with the fathers of the common law so far back that neither memory of man nor judicial records run to the contrary. It became crystallized as a part of the common law of England long prior to the Statute of 43 Elizabeth, c. 4, to the effect that gifts to charitable uses should be highly favored and construed by the most liberal judicial rules that the nature of each case, as presented, would admit of, rather than that the gift

should fail, and the intent of the donor fail of accomplishment. The judicial system in regard to such gifts was transplanted to and became a part of the common law of this country, and it has been so judicially declared in all or nearly all the States, barring the effect upon it of the Statute of Elizabeth, except in States where, by Statute, such system has been modified or abrogated."

My conclusions of law upon the whole case are as follows:

(1) That in and by the devise and bequest of his residuary estate, as set forth in his last will and testament, Dr. William Jasper Young, the testator, intended to create, and did create, a legal, valid and permanent public charitable trust or use for the purpose of establishing, building and equipping a public hospital in the town of Fairfax, S. C., for the treatment therein of white and colored patients.

(2) That the said charitable trust or use is sufficiently certain, definite and specific as to objects, purposes and classes of beneficiaries to be enforced by a Court of Equity under its ordinary and inherent chancery powers.

(3) That the said testator, having authorized and empowered the persons named in his will as executors to carry out that provision of his will, creating said charitable trust according to their best judgment, the said persons, to wit, E. L. Young, J. F. Lightsey, and J. E. Johnson, became, by implication of law, trustees of said charitable trust, and they have full and ample power and authority to execute and carry out said public charitable trust, so created by him, under supervision, if necessary, of the Court of Equity.

(4) That the powers so conferred upon his executors are not merely discretionary powers, or powers upon special trust or confidence, but they are trust powers of an imperative nature, and may be enforced and executed by the Court of Equity by the appointment of other trustees for that purpose and should executors die, refuse to act, and for any other reason fail to execute said charitable trust.

10—S. C.—122

(5) That the powers so conferred was coupled with the trust and the title to the said residuary estate of Dr. Young, upon his death and probate of his will, vested in the persons, so named by him as executors, as trustees, and said title is commensurate with the duties devolved upon them by said trust, the beneficial use being vested in the classes of beneficiaries mentioned by him.

(6) That the objects and purposes of said public charitable trusts are expressed and set forth in the testator's will in terms reasonably and sufficiently definite, specific, and certain to satisfy the requirements of the law governing a public charitable trust or use in this State.

(7) That the classes of beneficiaries designated in said charitable trust are so reasonably definite, specific, certain and ascertainable as to comply with the law of public charitable trusts and uses in this State, and the trustees, by law, are vested with full power and authority to select the immediate individual beneficiaries from among the classes so designated by the testator.

(8) That the said public charitable trust contained in testator's will, is sufficiently certain, definite and specific as to objects, purposes and classes of beneficiaries that it may be executed and carried out by a Court of Equity under and by virtue of its inherent chancery powers.

(9) That said public charitable trust was intended to be and is of a permanent character; it is therefore not subject to the law against perpetuities; and a Court of Equity has full and ample power to appoint other trustees to execute and carry out said charitable trust, in case of the death, refusal, or inability to act, of the trustees named by the testator.

(10) That, under the law of this State, the persons so named as executors, and, by implication of law, trustees of said charitable trust, have full power and authority to devise the details of a scheme for executing and carrying into effect the general purposes set forth by the testator in the

public charitable trust, created and declared by him in his said last will and testament.

(11) That the power conferred by the testator's will upon the persons named therein as executors is a power coupled with a trust; that said power is in equity a trust and will survive the death of the persons named, and may be executed and carried into effect by the appointment of other trustees by a Court of Equity which has ample power for that purpose under its general inherent chancery jurisdiction.

(12) That the failure of the testator to provide in express terms for the operation and maintenance of the public hospital intended to be established, built and equipped as provided in his will, does not render void or otherwise invalid and unenforceable the public charitable trust or use declared and created by his will.

(13) That the provision contained in the codicil to testator's will, in which he requests Fairfax Library Association to cooperate with his executors in providing a nurses' home, in connection with the hospital, provided for in his will, is expressed in precatory language, and is not, therefore, legally binding upon said Library Association, but the executors, or trustees of said charitable trust, may provide such nurses' home, if the same is reasonably necessary in equipping the said public hospital for the uses and purposes intended by the testator.

(14) That, under the facts in this case, and the law applicable thereto, the plaintiffs are not entitled to the relief demanded in their complaint, and the complaint therefore should be dismissed.

*Messrs. Holman & Boulware, J. E. Tobin, R. P. Searson, Jr.,* and *J. H. Johnson* and *Hendersons,* for appellants, cite: *Devise is void as a charitable trust in that:* (a) *No trustee appointed nor manner stated by which devise is to be made effectual:* 48 S. C., 444; 37 S. C., 457 (b) *is ex-*

*pressed in precatory language:* 15 Ed., 80.    (c) *Powers given Executors are in connection with Executorship:* 48 S. C., 516; 21 S. C., 1; 9 S. C., 492; 27 S. C., 591; 105 S. C., 44; 15 L. Ed., 80.    (d) *The Court cannot enlarge these powers:* 105 S. E., 275; 95 U. S., 591.

*Messrs. H. L. O'Bannon and Chas. Carroll Sims, for* respondents, cite: *Rule of construction as to charitable gifts:* 3 Story Eq., Jur. (14th Ed.), Secs. 1550-1-2. *Trust will not fail for want of a Trustee:* 21 R. C. L., 809; 15 L. Ed., 369.

November 14, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The statement of this case in the elaborate and admirable report of the special referee (Hon. J. E. McDonald) renders unnecessary any further statement.    This Court concurs in the main with the reasoning and conclusions of the referee, confirmed by the decree of the Circuit Judge, but deems it proper to add the following:

While the residuary estate is not bequeathed and devised to any particular person in express terms, the setting aside of that estate for the purpose declared, coupled with the express direction to the executors to carry out the provisions of the will relating thereto, constitutes a vesting, by implication, of the estate in the executors, charged with the expressed trust.

It does not necessarily follow that because the trust comes clearly within the definition of a "charitable trust," as it does, the idea is predominant that the benefits of the proposed institution are to be enjoyed gratuitously.    The will provides for the establishment of a "public hospital," in the ordinary management of which, necessarily, charges for services rendered are made.    The public hospital is ordained to be established "for the treatment of white and colored patients."    The provision for gratuitous treatment

is conspicuously absent. The absence of a provision for the maintenance of the hospital is inconsistent with the purpose that the treatment should be free and consistent with self-support.

The executors are authorized and empowered to establish, build and equip a public hospital; no direction is given that they shall operate it. It is improbable that a physician should have confided this duty to inexperienced men. The establishment of an institution of this character implies more than simply to purchase a lot, erect a building, and equip it with the necessary appurtenances of a hospital. The executors are directed by the execution of this trust to exercise "their best judgment"; and if in that exercise it should be deemed most expedient, as doubtless it would appear, not only to build and equip the hospital but to organize an executive force to operate and manage it, such power would be easily implied in the duty of an establishment. The operating organization, through the formation of a society, association, or corporation, could be referred to that duty.

Acting under the discretion lodged in them by the will, the executors may well, and should, take into consideration the size of the town of Fairfax, the health and needs of the community, the proximity of similar institutions, and other considerations which would affect the reasonable extent of the venture; a discretion which, wisely exercised, would in all probability leave and unexpended fund, to be invested for the purpose of meeting a deficiency in the operation, the almost inevitable consequence of which renders justifiable, if not imperative, some provision therefor, as a proper element in the policy of a sound establishment.

The judgment of this Court is that the decree of the Circuit Court be affirmed.